UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE CONN'S, INC. SECURITIES LITIGATION | § § § § § § | Civil Action No. 4: 14-cv-00548 (KPE) (Consolidated Action) |

**CLASS REPRESENTATIVES' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 5

I.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ................................... 5

    A.   Application of the *Reed* Factors Supports Approval of the Settlement as
        Fair, Reasonable, and Adequate .......................................................................... 6

        1.   The Settlement Was Reached Following Arm's-Length Negotiations
            with the Assistance of an Experienced Mediator and There Was No
            Fraud or Collusion ..................................................................................... 7

        2.   The Complexity, Expense, and Likely Duration of Continued
            Litigation Support Approval of the Settlement .......................................... 8

        3.   The Stage of the Litigation and the Amount of Discovery Support
            Approval of the Settlement ........................................................................ 9

        4.   The Substantial Risks of Establishing Liability and Damages
            Support Approval of the Settlement ........................................................ 11

        5.   The Range of Possible Recovery and the Attendant Risk of
            Litigation Support Approval of the Settlement ........................................ 13

        6.   The Opinions of Plaintiffs' Counsel, Class Representatives, and
            Absent Members of the Class Support Approval of the Settlement ........... 14

II.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE
    APPROVED ...................................................................................................... 16

III. NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE
    PROCESS ........................................................................................................ 17

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**CASES**

*Billitteri v. Securities America, Inc.*,
   No. 3:09-cv-01568-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ................................... 7, 13

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................... 15

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ....................................................................... 5, 6, 14

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) .............................................................................................. 17

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .............................................................................................. 18

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,
   No. H-01-3624, 2003 WL 22962792 (S.D. Tex. Nov. 5, 2003) ........................................ 6

*In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................................... 9, 10, 14

*In re Katrina Canal Breaches Litigation*,
   628 F.3d 185 (5th Cir. 2010) ................................................................................. 18

*In re Marsh & McLennan Cos. Securities Litigation*,
   No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. 2009) .................................... 19

*In re OCA, Inc. Securities & Derivative Litigation*,
   No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) .................................. passim

*Jarallah v. Sodexo, Inc.*,
   452 F. App'x 465 (5th Cir. 2011) ........................................................................... 6

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................................... 6, 8, 13, 15

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ................................................................................. 18

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ................................................................................... 7

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ................................................................................... 7

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................... 9

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................... 8, 13, 19

*Union Asset Management Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ............................................................................. 5, 7

## RULES

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................ 18, 19

Fed. R. Civ. P. 23(e)(2) ........................................................................................................ 5

Class Representatives, Laborers Pension Trust Fund—Detroit and Vicinity ("Detroit Laborers"), Connecticut Carpenters Pension Fund and Connecticut Carpenters Annuity Fund ("Connecticut Carpenters"), St. Paul Teachers' Retirement Fund Association ("St. Paul"), and Universal Investment Gesellschaft m.b.H. ("Universal") (collectively, "Class Representatives"), on behalf of themselves and the Class, respectfully submit this motion in support of final approval of the proposed settlement of this Action (the "Settlement") against Defendants Conn's, Inc. ("Conn's" or the "Company"), Theodore Wright, and Michael J. Poppe (collectively, "Defendants," and with Class Representatives, the "Parties"), and for approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").[1]

## INTRODUCTION

The Action arose from Defendants' alleged failure to disclose that, in an attempt to enhance Conn's growth, the Company drastically reduced Conn's underwriting criteria and increased retail sales by issuing credit to consumers who did not have the resources to repay their debts, while insisting that the Company's underwriting standards had remained essentially unchanged.

Class Representatives have agreed, subject to Court approval, to settle all claims asserted in this Action in exchange for a cash payment of $22.5 million, which has been deposited in an

---

[1] Unless otherwise indicated, all capitalized terms shall have those meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 13, 2018 (the "Stipulation") (ECF No. 180-2). The Court is also respectfully referred to the Declaration of James M. Hughes and Max Schwartz in Support of Class Representatives' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for Award of Attorneys' Fees, Payment of Litigation Expenses, and Reimbursement of Class Representatives' Costs and Expenses (the "Joint Declaration"), filed herewith. The Joint Declaration is an integral part of this submission and, for the sake of brevity in this motion, the Court is respectfully referred to it for a detailed description of, among other things, the history of the Action, the nature of the claims asserted, the negotiations leading to the Settlement, the risks and uncertainties of continued litigation, and the terms of the Plan of Allocation for the Settlement proceeds. Citations to "¶ _" refer to paragraphs of the Joint Declaration. All exhibits referenced herein are annexed to the Joint Declaration.

interest-bearing escrow account.  Class Representatives and Class Counsel respectfully submit that the proposed Settlement represents a very favorable result for the Class and easily satisfies the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure.

The proposed Settlement is the product of three-and-a-half years of hard-fought litigation, which included a detailed investigation into the claims alleged and resulted in four amended complaints, four rounds of motions to dismiss briefing, extensive fact discovery, a class certification motion, expert discovery related to class certification, and a Rule 23(f) appeal of the Court's class certification order to the U.S. Court of Appeals for the Fifth Circuit that was pending at the time the Parties agreed to settle the Action.  The Settlement was achieved only after three formal mediations conducted by Robert A. Meyer, Esq. ("Mr. Meyer") of JAMS, a well-known and highly respected mediator of complex securities class actions.  Class Representatives respectfully submit that the Settlement is particularly noteworthy in light of the then-pending risks involved in the Action, including the risk that the Fifth Circuit would decertify at least part of the Class and that Defendants would ultimately prevail at summary judgment, trial, or appeal.  Class Representatives, who are institutional investors of the type favored under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), fully support the settlement (*see* Exhibits 2 to 5 of the Joint Declaration) and it is the informed judgment of Class Counsel and Class Representatives that the Settlement is in the best interests of the Class.

The terms of the proposed Settlement are set forth in the Stipulation, which was previously submitted to the Court.  ECF No. 180-2.  In its June 28, 2018 Preliminary Approval Order, the Court preliminarily approved the Settlement, directed that notice of the proposed Settlement be given to potential members of the Class, and scheduled the final Settlement Hearing for October 11, 2018.  ECF No. 183.

As detailed in the Joint Declaration, at the time the agreement to settle was reached, Class Representatives and Plaintiffs' Counsel[2] had a well-developed understanding of the strengths and weaknesses of the claims and defenses in the Action. Before the Settlement was agreed to, Plaintiffs' Counsel had engaged in three-and-a-half years of litigation, which included: (i) a thorough investigation of the claims in the Action, including interviews with numerous former employees of Conn's and an extensive review of SEC filings, news reports, analyst reports; (ii) researching and drafting four comprehensive amended complaints; (iii) briefing four rounds of motions to dismiss and participating in multiple days of oral argument on Defendants' successive motions to dismiss; (iv) interviewing and obtaining declarations from all five confidential witnesses cited in the operative complaint; (v) working with experts in accounting, damages, and retail credit and underwriting regarding the underlying allegations and the damages suffered by the Class; (vi) successfully moving for class certification and participating in oral argument on plaintiffs' motion for class certification; (vii) briefing on Defendants' Rule 23(f) appeal of the class certification order; (viii) reviewing and analyzing nearly 700,000 pages of documents and taking ten fact depositions, including a deposition of a corporate representative of Conn's under Rule 30(b)(6); (ix) reviewing and producing documents and defending the depositions of the four class representatives; (x) reviewing SEC testimony and exhibits of Conn's current and former employees; (xi) preparing and exchanging detailed mediation statements; and (xii) settlement negotiations over the course of approximately one year. ¶ 9.

The substantial Settlement was achieved in the face of significant litigation risks. From the outset of the case, there was considerable uncertainty as to whether Class Representatives

---

[2] Plaintiffs' Counsel" means Class Counsel, Labaton Sucharow LLP ("Labaton Sucharow"), Ajamie LLP, and all other legal counsel who performed services in the Action on behalf of the Class Representatives or, at Class Counsel's direction, the Class.

would be able to obtain any recovery.  The case was subject to the heightened pleading standards of the PSLRA and Defendants had a number of overarching defenses to Class Representatives' claims for securities fraud.  For example, at the time the Parties agreed to settle the Action, Defendants' appeal of this Court's order granting class certification remained pending before the Fifth Circuit.  Even if the Fifth Circuit upheld the class certification order in full, Plaintiffs' Counsel faced significant hurdles in proving that Defendants' statements about Conn's underwriting standards were materially false and misleading in light of Defendants' argument that Conn's disclosed the various factors it took into account in making credit determinations and further disclosed that it changed those criteria.  According to Defendants, changes in the Company's credit standards did not cause its credit losses. Indeed, Defendants have vigorously argued that the adjustments Conn's did make to its underwriting standards before and during the Class Period did not have a statistically significant impact on Conn's overall credit portfolio. Defendants also maintained that the Class Period could not extend past February 20, 2014, on the basis that the truth regarding each of the statements upheld by the Court had already been disclosed to the market as of that date.

Plaintiffs' Counsel also faced meaningful challenges in proving that Defendants acted with the required intent to defraud necessary to establish Defendants' scienter. Defendants argued, among other things, that Conn's credit problems were the result of computer systems issues, personnel problems, and macro-economic factors beyond their control.  Plaintiffs' Counsel also had to address the fact that the Company's outside auditors approved Conn's credit reserves.

The proposed Settlement, if approved, will enable the Class to recover a substantial sum without incurring the significant risk that Defendants would prevail in their appeal before the Fifth Circuit or at summary judgment, trial, or in subsequent appeals on their numerous defenses to

liability and damages.  Moreover, the Plan of Allocation was developed in conjunction with a well-regarded economics expert and is designed to distribute the proceeds of the settlement fairly to members of the Class.  *See* ¶¶ 101-02.

The reaction of the Class to date further supports approving the Settlement and Plan of Allocation.  Pursuant to the Court's Preliminary Approval Order (ECF No. 183), as of September 4, 2018, 66,367 copies of the Notice have been mailed to potential Class Members and their nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire*.[3]  While the deadline for Class Members to object to the Settlement and Plan of Allocation or seek exclusion has not yet passed, to date, no objections have been received to any aspect of the Settlement and only one invalid exclusion request has been submitted.  *See* ¶ 134.

For the foregoing reasons, Class Representatives respectfully submit that both the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved.

## ARGUMENT

## I.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval.  The Settlement should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.").

---

[3] *See* Decl. of Alexandra Villanova Regarding:  (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received ¶¶ 11, 13 ("Villanova Decl."), attached as Ex. 6 to the Joint Decl.

In applying this standard, the Court must consider the strong public policy favoring settlement, particularly in class actions. *See Cotton*, 559 F.2d at 1331 ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. H-01-3624, 2003 WL 22962792, at *4 (S.D. Tex. Nov. 5, 2003) (same); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) ("'[T]he court should keep in mind the strong presumption in favor of finding a settlement fair.'"). Indeed, as the Fifth Circuit has held, "settlement agreements are highly favored by the law and will be upheld whenever possible." *Jarallah v. Sodexo, Inc.*, 452 F. App'x 465, 468 (5th Cir. 2011).

In evaluating the Settlement, the Court should not attempt to try the case or "to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton*, 559 F.2d at 133. Nor should it "make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained.'" *Id.* Instead, the Court should bear in mind that "compromise is the essence of a settlement" and that "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id.*

### A.    Application of the *Reed* Factors Supports Approval of the Settlement as Fair, Reasonable, and Adequate

The standards governing approval of class action settlements are well-established in this Circuit. In *Reed v. General Motors Corp.*, the Fifth Circuit held that the following factors should be considered in evaluating whether a class action settlement is fair, reasonable and adequate:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the

merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

703 F.2d 170, 172 (5th Cir. 1983); *see also Dell*, 669 F.3d at 639 n.11; *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004). Here, the Settlement easily satisfies the criteria for approval articulated by the Fifth Circuit.

       1.     **The Settlement Was Reached Following Arm's-Length Negotiations with the Assistance of an Experienced Mediator and There Was No Fraud or Collusion**

The first *Reed* factor considers whether there is any evidence that the settlement was obtained by fraud or collusion. There is absolutely no evidence of fraud or collusion here. To the contrary, the settlement was only reached after numerous extensive arm's-length settlement negotiations between experienced counsel, which included three formal mediations overseen by Mr. Meyer, an experienced mediator of class actions and other complex litigation, and additional negotiations following the mediation sessions that culminated in a mediator's proposal by Mr. Meyer. *See* ¶¶ 10, 66-69.

Given the arm's-length nature of the negotiations, counsels' experience, and the active involvement of an experienced mediator, there can be no question that the Settlement is procedurally fair and is not the product of fraud or collusion. *See Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) (concluding settlement was free of fraud or collusion when it was "diligently negotiated after a long and hard-fought process that culminated in ultimately successful mediation" before a retired judge); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *10 (E.D. La. Mar. 2, 2009) (finding no indication of fraud or collusion when "the settlement was the result of arm's length negotiations after two mediation sessions").

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

The complexity of the case and the expense and delay that would be required to achieve a litigated verdict in the Action also weigh in favor of approval of the Settlement. *See Klein*, 705 F. Supp. 2d at 651 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened."); *In re OCA*, 2009 WL 512081, at *11 (noting continued litigation, including through discovery, class certification, trial and appeals, "would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement"); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005) (finding costs and delays of continuing to litigate "fact-intensive and difficult-to-prove claims" support approval of the settlement).

Continuing to litigate this Action would have required substantial additional time and expense, without any guarantee of success. In the absence of the Settlement, continued litigation of the Action would have required continued expert discovery, an expected motion for summary judgment, *Daubert* motions, and a trial that would involve substantial expert and factual testimony with respect to liability and damages. Defendants would have vigorously contested numerous issues such as the falsity of the statements upheld by the Court, scienter, and loss causation. *See* ¶¶ 71, 74-88.

Class Representatives and Class Counsel recognize that, to prevail on Class Representatives' claims against the Defendants at trial, they would have had to marshal substantial factual evidence about Conn's underwriting standards during the Class Period and be prepared to present expert testimony to establish loss causation and damages. Class Counsel was prepared to

8

do so, but it cannot be disputed that achieving a litigated verdict in this Action would have required a substantial investment of time and resources.

Moreover, if Class Representatives were to succeed at trial, it is virtually certain that Defendants would appeal, further delaying the receipt of any recovery by the class. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) ("Litigating this case to trial would be time consuming, and '[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years.'" (alteration in original) (quoting *Rodriguez v. W. Pub'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009))).  All of the foregoing would pose substantial expense for the Class and delay the ability to recover—assuming, of course, that Class Representatives were ultimately successful on their claims.

In contrast, the proposed Settlement provides an immediate, significant, and certain recovery of $22.5 million for members of the Class, without subjecting them to the risk, delay, and expense of continued litigation.  Accordingly, this factor supports approval of the Settlement.

### 3.    The Stage of the Litigation and the Amount of Discovery Support Approval of the Settlement

The Settlement was reached after three-and-a-half years of litigation that included a detailed investigation by Plaintiffs' Counsel, thorough briefing on Defendants' motions to dismiss and Class Representatives' motion for class certification, Defendants' appeal to the Fifth Circuit, extensive factual and expert discovery, and preparation of detailed mediation statements. Accordingly, Class Representatives and Plaintiffs' Counsel had a firm grasp of the strengths and weaknesses of the case when negotiating and evaluating the proposed Settlement.  Indeed, the case settled after the close of fact discovery while Class Representatives' expert reports were being drafted.

Plaintiffs' Counsel's investigation in connection with the preparation of the four amended complaints was comprehensive, involving interviews with numerous former employees of Conn's, consultation with industry and economic experts, and an extensive review of publicly available information, including SEC filings, analyst reports, and information from related litigation. ¶ 9. Class Representatives and Plaintiffs' Counsel also thoroughly understood Defendants' defenses to the claims asserted in the Action through, among other things, the four rounds of motions to dismiss briefing, the class certification briefing, Defendants' appeal to the Fifth Circuit, and their detailed mediation statements. *Id.*

Plaintiffs' Counsel also reviewed and analyzed approximately 661,162 pages of documents produced by Defendants and approximately 28,114 pages of documents produced by non-parties. Plaintiffs' Counsel took ten fact depositions, including a deposition of a corporate representative of Conn's under Rule 30(b)(6). Representatives of each of the Class Representatives sat for Rule 30(b)(6) depositions in connection with Class Representatives' motion for class certification. The discovery process confirmed Class Representatives' and Plaintiffs' Counsel's belief that the Settlement is fair, reasonable, and adequate.

Accordingly, Class Representatives and Plaintiffs' Counsel clearly had a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See, e.g.*, *Heartland*, 851 F. Supp. 2d at 1064 ("Under [this] factor, the key issue is whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'"); *In re OCA*, 2009 WL 512081, at *12 ("The question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to

make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it.").

Here, based on the information developed, Class Representatives and Plaintiffs' Counsel were able to make an informed appraisal of the value of the case and they believe that the Settlement represents a resolution that is highly favorable to the Class without the substantial uncertainty and delay of continued litigation.

### 4. The Substantial Risks of Establishing Liability and Damages Support Approval of the Settlement

While Class Representatives and Plaintiffs' Counsel believe that the claims asserted against Defendants have merit, they recognize that there were very significant risks as to whether Class Representatives would ultimately be able to prove liability and establish damages on their claims and obtain any recovery in the Action. *See generally* ¶¶ 70-92. From the outset of the case, Class Representatives faced risks and uncertainty as to whether they would be able to achieve any recovery. Indeed, the Court's decision on the motion to dismiss the Fourth Consolidated Amended Complaint dismissed all of the alleged false statements in the second half of the Class Period. Moreover, with respect to the alleged false statements remaining in the Action, there were still substantial challenges to establishing their falsity at trial. ¶¶ 74-79. Defendants would have challenged both the falsity of the statements and that they were made with scienter, arguing in particular that Conn's disclosed the various factors it took into account in making credit determinations and further disclosed that it frequently changed those criteria. Defendants also would have argued that changes in the Company's credit standards did not cause its credit losses and that the adjustments Conn's did make to its underwriting standards did not have a statistically significant impact on Conn's overall credit portfolio. Although Class Representatives had evidence that Conn's underwriting changes and the dramatic increase of low FICO loans

11

fundamentally altered the risk profile of Conn's credit portfolio, quantifying these changes and increased risk could prove difficult.

Plaintiffs' Counsel also faced meaningful challenges in proving that Defendants acted with the required intent to defraud necessary to establish Defendants' scienter. Defendants argued that Conn's credit problems were the result of computer systems issues, personnel problems, and macro-economic factors beyond their control.  Plaintiffs' Counsel also had to address the fact that the Company's outside auditors approved Conn's credit reserves.

In addition to these challenges in establishing liability, Class Representatives also faced additional risks to establishing loss causation and damages. Defendants argued that Class Representatives would not be able to connect the alleged misstatements in 2013 to the full drop in Conn's stock price on the corrective disclosure dates and that evidence existed that would show that the deterioration in Conn's credit segment occurred across all segments of Conn's customer base, not only in the segments resulting from the alleged loosened underwriting standards.  There was also a risk that the Fifth Circuit would shorten the Class Period by changing the end date from December 9, 2014 to February 19, 2014, thereby reducing the Class-wide damages significantly. For example, the maximum potential damages, before taking into account negative loss causation, disaggregation and similar issues, would be approximately $800 million if the Class Period ends on December 9, 2014, but only approximately $300 million if it ends on February 9, 2014.[4]  In addition, Defendants argued that the declines in Conn's stock price were not caused by Defendants' alleged fraud, but were caused by the disclosure of other, non-actionable or

---

[4] If the Fifth Circuit accepted Defendants' arguments regarding price impact **and** shortening the Class Period, Class Representatives' maximum potential damages, before taking into account negative loss causation, disaggregation and similar issues, would be further reduced to approximately $230 million.

confounding factors, and that Class Representatives would be required to disaggregate the alleged artificial inflation in Conn's stock based solely on those losses that flowed from the loans that were the subject of misrepresentations, thus further reducing Class-wide damages. ¶¶ 6, 87.

While Class Representatives had responses to these arguments and believe that they ultimately would have prevailed, when viewed in the context of these significant litigation risks and the uncertainties involved with any litigation, the Settlement is a very favorable result. Accordingly, this factor supports approval of the Settlement. *See, e.g.*, *OCA*, 2009 WL 512081, at *13 (noting substantial risks plaintiffs faced in establishing loss causation and proving scienter favored approval of settlement); *Schwartz*, 2005 WL 3148350, at *18 (finding "plaintiffs' uncertain prospects of success through continued litigation," including challenges in proving "the statements made by Defendants were false when made" and establishing scienter, favored approval of settlement).

### 5. The Range of Possible Recovery and the Attendant Risk of Litigation Support Approval of the Settlement

"This factor includes an inquiry into whether the terms of the settlement 'fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits.'" *Billitteri*, 2011 WL 3586217, at *12 (quoting *Klein*, 705 F. Supp. 2d at 656). Class Representatives submit that the Settlement is well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation. Indeed, when weighed against the risks of continued litigation, including the risks that the Class Period could have been shortened by the Fifth Circuit, and the possibility that there would be no recovery at all, the proposed Settlement for $22.5 million in cash is a very favorable result. As discussed above, if a jury or the Court had credited even some of Defendants' arguments with respect to liability or damages, the Class might have recovered substantially less or even nothing at all.

13

According to a report by Cornerstone Research, the median settlement of securities class action settlements in the Fifth Circuit between 2008 and 2017 was $7.6 million, with 2.4% of "simplified tiered damages" recovered.  Joint Decl., Ex. 1 at 20, App'x 3.  Here, the Settlement exceeds both of these figures, in that it recovers $22.5 million and 2.81% of Class Representatives' economic expert's approximate maximum potential damages figure and approximately 9.78% of the estimated damages of $230 million if the Fifth Circuit accepted Defendants' arguments regarding price impact and shortening the Class Period.  Even if the Fifth Circuit did not accept Defendants' arguments regarding price impact and shortening the Class Period, Class Representatives faced serious disaggregation issues which potentially could reduce the damages in this case by a significant amount.  In light of these risks, the Settlement provides an excellent result for the Class.

6.   **The Opinions of Plaintiffs' Counsel, Class Representatives, and Absent Members of the Class Support Approval of the Settlement**

The opinions of Plaintiffs' Counsel, Class Representatives, and absent members of the Class all support approval of the Settlement.  Plaintiffs' Counsel strongly believe that the $22.5 million Settlement is in the best interests of the Class in light of the significant risks of continued litigation.  *See* ¶¶ 70-88.  Plaintiffs' Counsel have extensive experience in securities class action litigation and were well-informed about the strengths and weaknesses of the claims in the Action when they recommended that the Settlement be approved.  ¶¶ 122-24.  The judgment of experienced and well-informed counsel should be accorded great weight by the Court.  *See Cotton*, 559 F.2d at 1330 ("[T]he trial court is entitled to rely upon the judgment of experienced counsel for the parties."); *Heartland*, 851 F. Supp. 2d at 1068 ("'The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims.'"); *Klein*, 705

F. Supp. 2d at 649 ("The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight.").

Class Representatives, all sophisticated institutional investors, have supervised and monitored the work of Plaintiffs' Counsel throughout the Action and were kept apprised of the progress of the mediations with Defendants.  *See* Decl. of Derek Watkins, Esq., attached to the Joint Decl. as Ex. 2; Decl. of Richard S. Monarca, attached to the Joint Decl. as Ex. 3; Decl. of Jill E. Schurtz, attached to the Joint Decl. as Ex. 4; Decl. of Frank Schröder and Michael Eyben, attached to the Joint Decl. as Ex. 5.  Class Representatives' strong endorsement of the Settlement as providing an excellent recovery in light of the risks of the litigation supports approval of the Settlement.  *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at \*4 (S.D.N.Y. May 9, 2014) ("[T]he recommendation of Lead Plaintiff, a sophisticated institutional investor, also supports the fairness of the Settlement.").

Finally, the reaction of the Class to date supports approval of the Settlement.  Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), mailed copies of the Notice and Claim Form to potential Class Members and nominees within ten business days after entry of the Preliminary Approval Order ("Notice Date").  *See* Villanova Decl. ¶¶ 8-9.  The Notice sets out the essential terms of the Settlement and informs potential Class Members of, among other things, their right to opt out of the Class or object to any aspect of the Settlement, as well as the procedure for submitting Claim Forms.  While the deadline set by the Court for Class Members to exclude themselves or object to the Settlement has not yet passed, to date, no objections to the Settlement or the Plan of Allocation and only one valid request for exclusion have been received.  The deadline for submitting objections and requesting exclusion from the Class is September 20, 2018.  As provided in the

Preliminary Approval Order, Class Representatives will file reply papers on October 4, 2018, addressing any additional requests for exclusion and objections that may be received.

In sum, all of the *Reed* factors—including the arm's-length nature of the settlement negotiations; the complexity, expense and delay of further litigation; the significant risks of continued litigation; and Class Representatives' and Plaintiffs' Counsel's informed understanding of the strengths and weaknesses of the claims—support a finding that the Settlement is fair, reasonable, and adequate.

## II.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The Plan of Allocation, which was developed by Plaintiffs' Counsel in consultation with Class Representatives' economics expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who suffered losses as result of the conduct alleged in the Complaint and does not improperly grant preferential treatment to either Class Representatives or any segment of the Class. *See, e.g.*, *OCA*, 2009 WL 512081, at *11 (granting final approval to plan of allocation that "does not give unfair or preferential treatment to the lead plaintiff or any segment of the class"). Rather, all members of the Class, including Class Representatives, will receive an allocation of the Settlement Fund pursuant to the proposed Plan of Allocation. The Plan of Allocation awards a set measure of inflation for each day during the Class Period that will be used to calculate each claimant's pro rata share of the Settlement.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of Conn's common stock and call options and each sale of Conn's put options during the Class Period (April 3, 2013 through December 9, 2014, inclusive) that is listed in the Claim Form and for which adequate documentation is provided. ¶¶ 100-05. The calculation of Recognized Loss Amounts are based on the price changes observed in Conn's common stock,

16

call options, and put options over the period during which Class Representatives allege that corrective information was entering the marketplace.  Conn's Securities acquired during the Class Period and sold before the first alleged corrective disclosure on September 5, 2013, and Conn's Securities acquired after a corrective disclosure and sold before the following corrective disclosure will have no Recognized Loss Amount under the Plan of Allocation because any loss suffered on such sales would not be a result of the alleged misstatements.  *Id*.  *See also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005).

Under Class Counsel's direction, the Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants. The Net Settlement Fund will be distributed to Authorized Claimants on this *pro rata* basis as long as it is economically feasible to do so.  Any balance that still remains in the Net Settlement Fund after such distributions, which is not feasible or economical to reallocate, after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, will be donated to one or more non-sectarian, not-for-profit organizations serving the public interest designated by Class Representatives and approved by the Court.  *See* Notice ¶ 81.

The Plan of Allocation, which is set forth on pages 13 to 19 of the Notice, has received no objections from any Class Members to date.  ¶ 105.  Accordingly, for all of the reasons set forth herein and in the Joint Declaration, the Plan of Allocation is fair and reasonable, and should be approved.

### III. NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice provided to the Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to

all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).  The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable"—i.e., it must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'"  *Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983); *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) ("Under Rule 23(e), a settlement notice need only satisfy the 'broad reasonableness standards imposed by due process.'").

Both the substance of the Notice and the method of its dissemination to potential members of the Class satisfied these standards.  The Court-approved Notice includes all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including:  (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) an explanation of the reasons why the Parties are proposing the Settlement; (vi) a statement indicating the attorneys' fees and costs that will be sought; (vii) a description of Class Members' right to opt-out of the Class or object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Class Members.

As noted above, in accordance with the Court's Preliminary Approval Order, beginning on July 13, 2018, the Claims Administrator mailed copies of the Notice by first-class mail to potential members of the Class and their nominees.  *See* Villanova Decl. ¶¶ 8-9.  In addition, Class Representatives caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire* thereafter.  *See id.* ¶ 13.  Copies of the Notice, Claim Form, Preliminary Approval Order, and Stipulation were made available on the Settlement website maintained by Epiq, https://www.connssecuritieslitigation.com.  *See id.* ¶ 18.  This combination

of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on an internet website, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Schwartz*, 2005 WL 3148350, at *10-11; *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *12-13 (S.D.N.Y. 2009).

## CONCLUSION

For the foregoing reasons, Class Representatives respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair and reasonable.

Dated:  September 6, 2018

*/s/ Thomas R. Ajamie*
Thomas R. Ajamie
Texas Bar No. 00952400
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com

*Liaison Counsel*

James M. Hughes (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
jhughes@motleyrice.com
cmoriarty@motleyrice.com

*Class Counsel for Class Representatives and the Class*

Deborah Clark-Weintraub (*pro hac vice*)
Beth Kaswan (*pro hac vice*)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, New York  10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
dweintraub@scott-scott.com
bkaswan@scott-scott.com

*Class Counsel for Class Representatives and the
Class*

Jonathan Gardner (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
cfox@labaton.com

*Additional Counsel for Class Representatives*

**CERTIFICATE OF SERVICE**

I certify that on the 6th day of September, 2018, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.


*/s/ Thomas R. Ajamie*
Thomas R. Ajamie